UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>DIANNA WOODS,<br><br>Movant. | No. 2:12-cr-330-WBS-EFB P<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Dianna Woods ("movant"), proceeding pro se, has filed a motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255.[1] ECF No. 218. The government has filed a motion to dismiss or, in the alternative, an answer. ECF No. 224. Movant has filed an opposition. ECF No. 228. For the reasons stated hereafter, the government's motion should be granted and the section 2255 motion should be denied.

## Background

Movant was convicted of four counts of making false statements on loan and credit applications pursuant to 18 U.S.C. § 1014. ECF No. 184 at 1. Her conviction was affirmed on appeal. *See United States v. Dianna Woods*, 709 F. App'x 469 (9th Cir. 2018); ECF No. 224-7.

/////

---

[1] This motion was assigned, for statistical purposes, the following civil case number: 2:19-cv-0059-WBS-EFB.

1

1    The court finds it unnecessary, for the purposes of this motion, to reproduce a granular recitation

2    of the facts.  Suffice it to say, movant was a licensed real-estate agent employed by Trade

3    House/VLD Realty ("VLD") – a company owned by Volodymyr Dubinsky.  ECF No. 204 at 239,

4    352.  VLD built and sold homes (*id.* at 276-78) and, when business declined, Dubinsky (and his

5    brother Leonid) recruited family and employees to purchase properties.  ECF No. 206 at 444,

6    516-17.  Woods made false statements on Universal Residential Loan Applications in connection

7    with such purchases.  *See*, *e.g.*, ECF No. 205 at 352:15-21; ECF No. 206 at 414.

8    Movant has now, by way of her § 2255 motion, raised a multitude of claims attacking her

9    conviction.  First, she alleges that Michael Hansen – her trial counsel – was constitutionally

10   ineffective.  ECF No. 218 at 4.  Specifically, she claims that Hansen was ineffective in failing to:

11   (1) interview or call Robin Dimiceli, Tony Gane, an unnamed "loan funder," and various other

12   unidentified witnesses at trial (*id.* at 13-14); (2) investigate and/or introduce various documents

13   she claims would have been exculpatory (*id.* at 13); (3) possess the requisite real estate

14   knowledge to litigate her case (*id.*); (4) share attorney work product with movant (*id.* at 14); (5)

15   prepare for and demonstrate sufficient attentiveness at trial (*id.*); (6) failing to seek recusal of the

16   trial judge (*id.*); and (7) failing to notify the court of a breakdown in communications between

17   attorney and client (*id.*).  She also alleges that all of the foregoing cumulatively prejudiced her.

18   *Id*. at 13.

19   Second, movant challenges the sufficiency of the evidence underlying two counts of her

20   conviction.  *Id.* at 22.  She claims that she had no involvement with two of the loan applications

21   containing false statements. *Id.*  Instead, movant maintains they were originated by an individual

22   named Howard Wing. *Id.*

23   Third, movant argues that the government maliciously prosecuted her insofar as it: (1)

24   failed to prove the allegations in the indictment against her; and (2) selectively prosecuted her and

25   not others who were similarly situated.  *Id.* at 23.

26   /////

27   /////

28   /////

2

1        Fourth, movant raises a sentencing disparity argument.  She contends that her sentence
2   was substantively unreasonable insofar as she received the same sentence as another defendant
3   involved in the fraudulent loan scheme – Robin Dimiceli – when movant believes herself to be far
4   less culpable.  *Id.* at 24.
5        For the reasons stated hereafter, movant is entitled to no relief.

Legal Standards

I.   Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence.  *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002).  Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States.  *Davis v. United States*, 417 U.S. 333, 344-45 (1974); *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).  To warrant relief, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254.")  Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice."  *Davis*, 417 U.S. at 346.  *See also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

Claims or arguments raised on appeal are not cognizable in a § 2255 motion.  *See United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (claims previously raised on appeal "cannot be the basis of a § 2255 motion."); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979) ("[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding.").  *See also Davis v. United States*, 417 U.S. 333, 342 (1974) (issues determined in a previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law).

/////

Conversely, claims that could have been, but were not, raised on appeal are not cognizable in § 2255 motions. *United States v. Frady*, 456 U.S. 152, 168 (1982) (a collateral challenge is not a substitute for an appeal); *Sunal v. Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal"); *Unites States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities to overturn their convictions on grounds which could have been raised on direct appeal"). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," or that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted); *United States v. Braswell*, 501 F.3d 1147, 1149 (9th Cir. 2007) (same). "Ineffective assistance of counsel constitutes 'cause' for failure to raise a challenge prior to section 2255 collateral review." *United States v. De la Fuente*, 8 F.3d 1333, 1337 (9th Cir. 1993).

Claims challenging the sufficiency of the evidence are not cognizable in § 2255 motions. *See United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010) (movant's "evidence-based" claim that "called into doubt the overall weight of the evidence against him" was not cognizable in § 2255 motion); *Barkan v. United States*, 362 F.2d 158, 160 (7th Cir. 1966) ("a collateral proceeding under section 2255 cannot be utilized in lieu of an appeal and does not give persons adjudged guilty of a crime the right to have a trial on the question of the sufficiency of the evidence or errors of law which should have been raised in a timely appeal"); *United States v. Collins*, 1999 WL 179809 (N.D. Cal. Mar. 25, 1999) (insufficiency of the evidence is not a cognizable attack under section 2255).

  II. <u>Ineffective Assistance of Counsel Claims</u>

The applicable legal standards for a claim of ineffective assistance of counsel are set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) her counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside

"the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 562 U.S. at 106. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. A reviewing court "need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697.

The *Strickland* standards apply to appellate counsel as well as trial counsel. *Smith v. Murray*, 477 U.S. 527, 535-36 (1986); *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." *Id.* Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be

5

1  "seriously undermined." *Id.  See also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998)
2  (Counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even
3  particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless
4  arguments on a client's behalf.  *See Strickland*, 466 U.S. at 687-88 (requiring a showing of
5  deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a
6  weak issue.  *See Miller*, 882 F.2d at 1434.

Analysis

I.  Sentencing Disparity

The government contends that movant's claim regarding her sentencing disparity with Robin Dimiceli was previously litigated on direct appeal and, consequently, is foreclosed.  The court agrees.  Movant raised this argument in her opening brief on direct appeal.  ECF No. 224-6 at 19-21.  The U.S. Court of Appeals for the Ninth Circuit rejected it.  ECF No. 224-7 at 5.  It is, as the government points out, settled law that a section 2255 motion is not a proper vehicle for re-litigating issues decided adversely on direct appeal.  *See Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a § 2255 motion.").  This proposition holds true even where a movant phrases her claim differently or raises new legal arguments in its support; it matters only that the "basic thrust or 'gravamen'" is the same.  *Molina v. Rison*, 886 F.2d 1124, 1129 (9th Cir. 1989).  The matter might be different if there had been some intervening change in the law between the adverse decision on direct appeal and the current motion.  The court is not aware of such a change, however, and movant has made no argument to that effect.

For the foregoing reasons, this claim must be dismissed.

II.  Malicious Prosecution and Sufficiency of the Evidence Claims

Movant's second and third grounds for relief are procedurally barred because she could have raised them on direct appeal, but did not.  *See United States v. Ratigan*, 351 F.3d 957, 962 (9th Cir. 2003) ("A § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default.").

6

Movant has made no attempt to assert cause or prejudice; nor has she demonstrated actual innocence. Moreover, her malicious prosecution claim is not cognizable in a § 2255 motion. *See*, *e.g.*, *Schipke v. United States*, No. CR 04-2195-TUC-CKJ (BPV), 2011 U.S. Dist. LEXIS 157131, *10 (D. Ariz. Oct. 21, 2011) ("[Movant's] claim of malicious prosecution in ground three is not cognizable in a § 2255 motion."); *see also Awabdy v. City of Adelanto*, 368 F. 3d 1062, 1066 (9th Cir. 2004) (indicating that malicious prosecution is a tort and, in federal court, must be brought in a § 1983 motion).

Movant's ineffective assistance of counsel claims are not procedurally barred, however. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that "an ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal"). Instead, the court recommends they be denied on their merits for the reasons set forth *infra*.

### III. Ineffective Assistance of Counsel

As noted *supra*, movant has raised several distinct ineffective assistance claims. The court will address them in the order they have been presented.

#### A. Failure to Interview or Call Trial Witnesses

Movant's claim that her counsel was ineffective in failing to call Robin Dimiceli, Tony Gane, her "loan funder," or any other unidentified witness is insufficiently supported.

##### 1. Robin Dimiceli

Movant argues that Dimiceli's testimony would have impeached prosecution witness Howard Wing. ECF No. 218 at 14, ¶16. Specifically, movant contends that Dimiceli would have testified that she and Wing "had a working relationship" and that Dimiceli worked on his loan transaction. *Id*. Movant does not explain precisely how this testimony would have impeached Wing, nor does she explain how Wing's impeachment would, standing alone, have been sufficient to create a reasonable doubt as to her guilt.

/////
/////
/////

7

Additionally, the record indicates that movant's counsel did reach out to Dimiceli's counsel prior to the first trial[2] and was told that she was not willing to testify. ECF No. 205 at 113. Movant has not offered any theory as to why Dimiceli's position would have changed at the time of her second trial. Thus, she has not shown that Dimiceli was actually available and willing to testify. *See United States v. Harden*, 846 F.2d 1229, 1231-32 (9th Cir. 1988) (holding that trial attorney was not ineffective in failing to call a witness where there was no record evidence establishing that witness was prepared to testify).

Finally, as the government points out, the decision not to call Dimiceli may reasonably have been strategic. At the time of the second trial – November 2016, Dimiceli had been convicted. *See United States v. Dubinsky, et al.*, 2:12-cr-328 WBS EFB, at ECF No. 176 (Dimiceli Judgment, Dated April 13, 2016). As a convicted felon, Dimiceli's credibility would have been suspect. *See Harden*, 846 F.2d at 1232 ("Furthermore, the decision not to call Washington as a witness appears to be a reasonable trial tactic. Washington was a convicted felon with numerous prior felony convictions. His credibility could have been at issue.").

### 2. Tony Gane

Movant argues that her counsel should have called Tony Gane who, she claims, would have testified that Dimiceli and Wing knew each other and that the former prepared loans for the latter. ECF No. 218 at 14. This claim is conclusory insofar as movant does not explain how this testimony would have created a reasonable doubt as to her guilt. Nor does she offer any evidence that Gane would have actually testified in the manner she suggests. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (finding no ineffective assistance where movant failed to provide an affidavit from the relevant witness indicating that they would have provided helpful testimony). Absent such evidence, this claim is too speculative to grant relief.

### 3. Loan Funder

Movant argues that her counsel should have interviewed or subpoenaed her "loan funder." ECF No. 218 at 13, ¶ 6. She contends that her loan file contained "different signatures" and notes

---

[2] Movant first's trial ended in a mistrial. ECF No. 224-11 at 9-10. The convictions at bar stem from the second.

8

that a government witness who testified on behalf of Wells Fargo Bank stated that inconsistent signatures would have been a cause for concern. *Id.* From that testimony, movant extrapolates that her funder had useful information because they were tasked with "perfect[ing] the file and resolv[ing] any inconsistencies prior to funding the loans." *Id.* Movant offers no explicit theory as to what testimony her loan funder would have provided or how that testimony would have created a reasonable doubt as to her guilt. To the extent movant sought to introduce evidence that the funder was negligent in failing to detect fraud, such evidence would have proved inadmissible. *See United States v. Hanley*, 190 F.3d 1017, 1023 (9th Cir. 1999); *see also United States v. Coyle*, 63 F.3d 1239, 1244 (3d. Cir. 1995) ("The negligence of the victim in failing to discover a fraudulent scheme is not a defense to criminal conduct.").

### 4. Unnamed Witnesses

Movant vaguely references unnamed witness whom, she claims, her counsel should have subpoenaed and called at trial. She does not detail what testimony these unnamed individuals would have provided. This claim fails for obvious reasons. Absent information as to their identities and potential testimony, it cannot be concluded that counsel's failure to call any unnamed witness was prejudicial under *Strickland*.

## B. Failure to Investigate or Introduce Documents

Movant argues her counsel was ineffective in failing to introduce various documents, namely: (1) documents from lender's files; (2) the underwriting guidelines applicable to her loans; (3) documents from mortgage brokers' files; and (4) an interview report documenting the out of court statements of Khalfin – movant's mortgage broker.

### 1. Lender Files

Movant claims that her counsel failed to introduce the "lender's discovery file" into evidence at trial. She argues that, had he done so, the file would have demonstrated that the mortgage broker was the party responsible for submitting loan applications with false information and forged signatures. ECF No. 218 at 13, ¶¶ 2, 5. Movant also claims that movant did not obtain the "best evidence (original loan packages) from the lender. *Id.* at 13, ¶ 5.

/////

As an initial matter, this claim fails for lack of specificity. Movant offers the unadorned conclusion that "[d]iscovery shows the mortgage loan broker in petitioner's loans and others admitted to altering documents." *Id.* at 13, ¶ 2. She also states that "[d]iscovery shows the mortgage loan broker in petitioner's loans and one other admitted to altering documents." *Id*. Movant cites no evidence which supports these claims. Vague allusions to "discovery" are effectively unreviewable insofar as they do little more than invite the court to guess as to what documents she is referencing.

Additionally, the government points out that movant's trial counsel did admit a loan application into evidence. ECF No. 205 at 14-15. Movant's counsel questioned one of the lenders and elicited testimony that initial loan application and information is typically generated by the mortgage broker, not the borrower. *Id.* at 17-18. This testimony was highlighted for the purpose of showing that movant was unaware of the falsehoods in her loan applications at the time she signed them. Thus, the theory movant now attempts to convey – that it was the mortgage broker who was responsible for the false statements – was before the jury at trial. The jury – which had been instructed that it did not matter whether movant *personally* affixed the false information to her loans (ECF No. 224-8 at 5) - still chose to convict her. Thus, the court finds that, even if movant's counsel had found and introduced other documents which supported her theory of the case, she has failed to demonstrate that such documents would have altered the outcome of her case.

### 2. Underwriting Standards

Movant argues that her counsel should have investigated and obtained the specific underwriting standards which applied to her loans in order to understand how "the figures were calculated and placed in the loan application." ECF No. 218 at 13, ¶ 7. This claim fails because movant does not explain how investigation of this information would have altered the outcome of this case. The entirety of this claim is as follows:

> Counsel fails to investigate, interview Petitioner's Underwriter and request underwriting guidelines and standards that were in place and used to underwrite loans, in order to understand how figures were calculated and placed in the loan applications. Government expert witness at trial presented the Bank's general underwriting policies,

>                 but were not directly involved with Petitioner's loan, her Underwriter
>                 or the local business norms that existed.

*Id.* Nothing in the claim specifically describes the applicability of this investigation (or information) to movant's theory of the case. And movant does not offer any argument as to what her counsel would have found had he investigated. *See Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir. 1997) (no ineffective assistance where movant failed to present evidence as to what additional investigation by his counsel would have uncovered). Consequently, the court cannot find that her counsel's failure to investigate this information prejudiced her.

### 3. Mortgage Broker's File

Movant argues that her counsel should have subpoenaed the mortgage brokers' files. She contends that these files would have shown that the mortgage brokers were committing were committing similar types of fraud in other, unrelated loans. ECF No. 218 at 13, ¶ 3. Movant also argues that the files would have contained communications between the brokers and Howard Wing. *Id.* at 14, ¶ 17. She concludes by stating that "[t]he brokers were the ones who manipulated the Universal Residential Loan Application to fit the loan." *Id.*

This claim fails because it is purely speculative. Movant has not offered any concrete evidence that the files would have contained what she alleges. *See Cooks v. Spalding*, 660 F.2d 738, 740 (9th Cir. 1981) (speculation insufficient to establish prejudice under *Strickland*).

### 4. Khalfin's Out of Court Statements

Movant argues that "[c]ounsel failed to investigate, introduce or submit into evidence 302's presented in discovery in which Mortgage Loan Broker, Edward Kalphin [sic] admits to the FBI with his attorney present of altering documents." ECF No. 218 at 13, ¶ 4. This claim fails because counsel *did* attempt to introduce Khalfin's out of court statements. ECF No. 224-14 at 2-5. The court ruled them inadmissible. ECF No. 205 at 113-121.

### C. Counsel's Lack of Real Estate Expertise

Movant claims that her counsel was ineffective because he lacked sufficient real estate expertise to defend her case. ECF No. 218 at 13, ¶ 8. She claims that counsel did not ameliorate this lack of expertise by seeking out "resources or experts." *Id.* Finally, she claims that counsel's

lack of real estate expertise "prevented him from understanding and asking questions that were necessary to provide a defense." *Id.* at 14, ¶ 12.

This claim is conclusory, vague, and speculative. Movant fails to articulate what specific real estate expertise her counsel lacked or how possession of that expertise would have changed the outcome of her case. It is unclear, for instance, what "questions" counsel was precluded from understanding or asking due to his alleged lack of expertise. Thus, movant has not met her burden under *Strickland*.

### D. Failure to Share Work Product

Movant contends that counsel was ineffective because he failed to share his "work product" with her. ECF No. 218 at 14, ¶¶ 12, 15. This claim fails because it is conclusory. Movant never explicitly states how her inability to review her counsel's "work product" prejudiced her defense. Additionally, movant does not identify any authority which compels defense counsel to share every piece of "work product" with his or her client. To the contrary and as the government points out, courts have declined to find that constitutionally adequate representation sweeps in such a duty. *See*, *e.g.*, *Gaughan v. United States*, No. 2:02 CV169, 2006 U.S. Dist. LEXIS 70744 * 41 (N.D. Ind. Sept. 28, 2006) ("Gaughan cites no authority indicating that counsel had a duty to provide Gaughan with access to or copies of discovery materials. Every authority the court could locate suggests the opposite."); *Martinez v. Chandler*, No. 11-2277, 2012 U.S. Dist. LEXIS 88321 * 12 (C.D. Ill. June 26, 2012) ("This court is unaware of any Supreme Court decision stating that defense counsel is obligated to share discovery materials with the defendant.").

### E. Counsel's Alleged Lack of Preparation and Inattentiveness at Trial

Movant argues that her counsel: (1) was late for the first day of trial; (2) forgot to bring the file to court; (3) failed to submit defense evidence; (4) did not review all discovery; (5) checked his cell phone during trial; (6) prepared a PowerPoint while a video deposition was played; and (7) failed to provide movant with a paper copy of her file so that she could prepare her section 2255 motion. ECF No. 218 at 13 ¶ 1, 14 ¶ 13, 15-16. Movant has failed to show that
/////

the foregoing shortcomings, taken as true and considered either individually or collectively, prejudiced her defense.

First, counsel's lateness on the first day of trial had no obvious or appreciable effect on the outcome of the trial. Even if the jury had been aware of counsel's late arrival – and the government contends that they were not (ECF No. 224 at 44) – any implicit contention that this occurrence affected the verdict is purely speculative.

Second, the record does indicate that a short break was taken on the third day of trial to enable movant's counsel to retrieve a hard drive with documents. ECF No. 206 at 11. But this event can hardly be said to have caused disruption. The court went so far as to remark that the break was "understandable" and that proceedings as a whole were "well ahead of schedule." *Id.* Movant cannot reasonably claim that her case was prejudiced by counsel's alleged oversight in this regard.

Third, movant's claims regarding counsel's failure to submit defense evidence and to review all discovery are insufficient to show prejudice. The motion lacks relevant details – it fails to describe the relevant evidence and discovery or to explain their legal significance. The only specific complaint that the court can discern is that counsel allegedly overlooked forged signatures in the loan files until movant pointed them out. ECF No. 218 at 14 ¶ 10. Nor does movant show how she was not actually prejudiced by this oversight insofar as the signatures were ultimately brought to counsel's attention.

Fourth, movant's contention that counsel checked his phone during trial and prepared a PowerPoint while a video deposition played are insufficient to establish prejudice. Woods does not raise any specific, discernable argument linking these actions (assuming they are true) to the outcome of the case. She broadly alleges that counsel did not present the "best possible defense," but never defines this.

Fifth, counsel's failure to provide her with a paper copy of her file after she was convicted is not reviewable within the context of a section 2255 motion. Counsel's alleged failure to do so is in no way an attack on the validity of the conviction itself. *See* 28 U.S.C. § 2255(a) (describing the contours and purpose a section 2255 motion).

F.     Failure to Seek Recusal of the District Court Judge

Movant argues her counsel was ineffective in failing to move for recusal of the district court judge. ECF No. 218 at 14 ¶ 14. But, as the government points out, there is no indication that a recusal motion would have been meritorious. Movant points to two rationales for recusal.

First, she contends that:

> [The first] trial ended because of the judge's outrageous behavior when he threw his hands in the air and twirled in his seat during [Professor Black's] testimony. Petitioner was prejudiced when during petitioner's motion to replace counsel the judge [was] still harboring ill will against Professor Black's Testimony. [The] judge sided with counsel that Professor Black['s] testimony had provided more harm to petitioner than good. Had the judge listened to the petitioner before he shut her down with his comments. He would have understood that the mis-trial occurred by counsel and his un-preparedness.

*Id.* This claim is inconsistent with the record. The district judge did not "shut [movant] down." Movant had the opportunity at a hearing to express her concerns about her counsel's handling of Black's testimony. ECF No. 224-4 at 8. The district judge specifically asked movant if she had said all she wanted to say about Black and counsel's handling of the witness. *Id.* Movant replied in the affirmative. *Id.* The district judge went on to calmly conclude that "Mr. Black didn't help you. And it wasn't because [counsel] was asking the wrong questions." *Id.* In light of the foregoing, she cannot reasonably claim that the district judge's decision to deny her request for substitution of counsel was a consequence of any "ill will"[3] regarding Professor Black.[4]

Second, movant contends that she was prejudiced by the district judge's refusal to allow her previous counsel – Kathryn Druliner – to serve as a paralegal for her trial counsel. ECF No.

---

[3] The district judge expressed his view that Black appeared to have a "personal vendetta he has with regard to banks and this bank in particular . . . ." ECF No. 224-4 at 9. These comments, though obviously critical of Black, do not demonstrate bias which militates in favor of recusal. "[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 554 (1994).

[4] The government correctly notes that a movant faces a high standard in raising a claim of judicial bias. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (holding that a claimant "must overcome a presumption of honesty and integrity in those serving as adjudicators . . . ."). Movant has not done so here.

14

218 at 14 ¶ 14.  Adverse rulings, standing alone, are not a sufficient basis for recusal, however.  *Litekey v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . .  Almost invariably, they are proper grounds for appeal, not for recusal.").  Thus, this claim also fails.

### G.      Counsel's Failure to Notify the Court of a Strained Relationship

Movant argues that her counsel failed to notify the court of their "strained relationship" and she was prejudiced because he would not assent to her request for new counsel.  ECF No. 218 at 13 ¶ 9.  She contends that she met with counsel prior to the motion for substitute counsel.  *Id.*  Counsel allegedly used statements movant made during that meeting against her at the motion hearing.  *Id.*

The transcript of the motion hearing contradicts movant's claim that counsel used her statements against her.  ECF No. 224-4 at 2-28.  And the court agrees with the government that, although movant viewed her relationship with counsel as "strained," neither counsel nor the district judge shared that view.  *See id.* at 4 (Counsel stating that movant's concerns were, in his estimation "largely strategic in nature."); 23 (Court noting that movant's "all you have told me so far is that there are communication problems.").  And, in any event, movant had an opportunity to notify the court of her "strained relationship" with counsel at the hearing.  Thus, she cannot claim to have been prejudiced by counsel's failure to notify the court of the same.

### H.      Cumulative Prejudice

Having found no prejudice with respect to the foregoing claims, the court necessarily concludes that movant was not cumulatively prejudiced by her trial counsel's performance.  *See Fuller v. Roe*, 182 F.3d 699, 704 (9th Cir. 1999) (finding cumulative-error doctrine inapplicable absent any errors).

### Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The government's motion to dismiss (ECF No. 224) be GRANTED and all of movant's claims, other than those related to ineffective assistance of counsel, be DISMISSED as procedurally barred;

  2. Movant's ineffective assistance of counsel claims be DENIED on their merits for the reasons specified in these recommendations;

  3. Movant's motion to vacate, set aside or correct her sentence pursuant to 28 U.S.C. § 2255 (ECF No. 218) be DENIED in its entirety;

  4. The Clerk be directed to close the companion civil case, No. 2:19-cv-0059-WBS-EFB; and

  5. The Clerk be directed to enter judgment accordingly.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 29, 2020.

            /s/ Edmund F. Brennan
            EDMUND F. BRENNAN
            UNITED STATES MAGISTRATE JUDGE